UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X
TAREK AL MANWARE,

            Petitioner,

-against-

**OPINION & ORDER**
**CV-07-2218 (SJF)**

WARDEN CAMERON LINDSAY et al.,

            Respondents.
-----------------------------------------X
FEUERSTEIN, J.

On May 30, 2007, *pro se* petitioner Tarek Al Manware ("Petitioner") filed a petition ("Petition") seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("§ 2241"). For the reasons set forth herein, the Petition is denied and the proceeding is dismissed.

I.    BACKGROUND

On December 17, 2004, Petitioner entered a plea of guilty to International Parental Kidnapping in violation of 18 U.S.C. § 1204, for, *inter alia*, directing the kidnapping of his daughter Suha Al Manware ("Suha") to Jordan during his incarceration at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. On September 9, 2005, Petitioner was sentenced to thirty-six (36) months' imprisonment to be followed by three (3) years of supervised release. (04 CR 309, Doc. No. 25).

1

At sentencing, United States District Judge David G. Trager imposed the following special conditions of supervised release: (1) "[i]f [Petitioner] is deported, he may not reenter the United States;" (2) "[a]n order of protection is provided for [Petitioner's] wife;" (3) "a mandatory $100 special assessment;" (4) "prohibition on the possession of any firearm;" and (5) "if when [Petitioner] gets out of jail, on the third year, if [his daughter Suha] is not here, I'll direct the government to file immediately for a violation of supervised release and [Petitioner will] get two more years . . . ." (Tr. of Sent. Hear. 12-14). When Petitioner asked how he could comply with the condition that he return his daughter to the United States while he is incarcerated, Judge Trager responded "[c]all up your mother and tell her to bring the child to America or to hand the child over in custody to an official of the United States . . . ." (Tr. of Sent. Hear. 13-14).

On October 6, 2006, Petitioner was released into the custody of Immigration and Customs Enforcement ("ICE") by the United States Bureau of Prisons ("Bureau of Prisons"), and, on that date, the United States Probation Department filed a Report on Violation of Supervised Release ("Violation Report") based on Petitioner's failure to return his daughter Suha to the United States in accordance with Judge Trager's directive. (See Violation Report 6-7). On October 12, 2006, the United States Marshal executed a Detainer Based on Violation of Supervised Release ("Detainer") against Petitioner and returned Petitioner to the custody of the Bureau of Prisons. (See Detainer, attached as Ex. C to Pet.).

A hearing on the charged violation of supervised release was scheduled for March 22, 2007, (04 CR 309, Doc. No. 36), and was adjourned at the request of defense counsel on March 22, 2007 and on April 23, 2007, (04 CR 309, Doc. Nos. 37-39). Respondents allege that the hearing was further delayed because "defense counsel sustained injuries in a car accident that

rendered him unable to work during the Summer of 2007." (Response to the Pet., filed Dec. 12, 2008, p. 6).

On October 24, 2007, a hearing was held, at which Judge Trager found that Petitioner "violated the condition of supervised release which directed him to facilitate the return of his daughter to the United States." (Violation Hear. Tr. 19). Judge Trager sentenced Petitioner to time served (one (1) year and eighteen (18) days). (See Violation of Supervised Release Order, 04 CR 309, Doc. No. 44).

Petitioner now seeks a writ of habeas corpus pursuant to § 2241 alleging, *inter alia*, that: (1) he "has never received any actual notice" of the condition of supervised release that he was charged with violating, (Pet. ¶ 14); (2) his term of supervised release never commenced because he was never "actually released from custody" and "no Probation Officer has visited him and reviewed any standard or special conditions of release," (Pet. ¶ 15); (3) he is not able to comply with the special condition of supervised release that he arrange for his daughter Suha's return to the United States because he is in a federal prison, (Pet. ¶ 16); and (4) his due process rights were violated because he was not given a timely revocation hearing, (Pet. ¶ 17).

II.  DISCUSSION

  A.  Petitioner's *Pro Se* Status

A *pro se* petitioner's submissions are held "to less stringent standards than formal pleadings drafted by lawyers . . . ." Hughes v. Rowe, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Thus, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise

the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotations and citations omitted). Nonetheless, a *pro se* petitioner is not exempt from compliance with relevant rules of procedural and substantive law. See Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983).

B. Section 2241

Section 2241 "permits federal courts to entertain habeas corpus petitions from federal prisoners 'in custody in violation of the Constitution or laws or treaties of the United States.'" Cephas v. Nash, 328 F.3d 98, 103 (2d Cir. 2003) (quoting Jimian v. Nash, 245 F.3d 144, 147 (2d Cir. 2001)). While "[t]he ordinary vehicle for a federal prisoner to seek habeas relief is 28 U.S.C. § 2255, under which a prisoner may have his sentence vacated or set aside," habeas relief pursuant to § 2241 "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001). "Execution of a sentence includes matters such as 'the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006) (quoting Jimian, 245 F.3d at 146).

C. Actual Notice

Petitioner contends that he "has never received any actual notice" of the condition of supervised release that he was charged with violating because, *inter alia*, it was not stated in the Order of Judgment and Conviction ("Judgment") that Petitioner was to return his daughter to the

4

United States by the end of his term of incarceration. However, "[i]t is well settled, as a general proposition, that in the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls . . . ." United States v. Rosario, 386 F.3d 166, 168 (2d Cir. 2004) (citations omitted); see United States v. Hanakas, 329 F.3d 115, 117 (2d Cir. 2003) (stating that "in the event of a conflict between the oral pronouncement of sentence and the written judgment, the oral pronouncement controls because the defendant is present at the announcement of the sentence, but not when the judgment is later entered") (internal quotations and citations omitted); see also United States v. DeMartino, 112 F.3d 75, 79 (2d Cir. 1997) (stating that "[i]t is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence") (citations omitted).

Although the condition was not stated in the Judgment, Petitioner was present at the September 9, 2005 sentencing where Judge Trager announced the condition on the record. Indeed, Petitioner explicitly inquired at sentencing how he could comply with the condition. (Tr. of Sent. Hear. 13-14). Therefore, Petitioner had actual notice of the condition of supervised release that he was charged with violating. See Rosario, 386 F.3d at 168. Accordingly, habeas relief is not warranted on this claim.

D.     Commencement of Supervised Release Term

Insofar as Petitioner contends that his term of supervised release has never commenced because, *inter alia*, he was released directly from the custody of the Bureau of Prisons into the custody of immigration officials, this contention is without merit. Pursuant to 18 U.S.C. § 3624:

> The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release.

18 U.S.C. § 3624(e); see also United States v. Rivard, 184 F.3d 176, 178 (2d Cir. 1999).

Contrary to Petitioner's contention, Petitioner's supervised release term began when he was "released from imprisonment" by the Bureau of Prisons into the custody of ICE on October 6, 2006. 18 U.S.C. § 3624(e); see also Abimbola v. United States, 369 F. Supp. 2d 249, 253 (E.D.N.Y. 2005) (holding that a term of supervised release begins on the day that the person is released from prison and continues to run during a subsequent period of detention by immigration authorities). Insofar as Petitioner claims that his term of supervised release has not commenced because "no Probation Officer has visited him and reviewed any standard or special terms of release," such claim is likewise without merit. Accordingly, habeas relief is not warranted on this claim.

### E. Ability to Comply with Condition

Petitioner also contends that "he would not even be able to" arrange for his daughter Suha's return to the United States while he is "a federal prisoner." (Pet. ¶ 16). Because Petitioner failed to object to this special condition of supervised release at sentencing, plain error review applies. See United States v. Simmons, 343 F.3d 72, 80 (2d Cir. 2003) (stating that "[g]enerally, such a failure to object results in the application of plain error review, which precludes [a court] from correcting an error unless it affects a defendant's substantial rights") (internal quotations and citations omitted).

> "For there to be plain error, there must be (1) an error that (2) is plain and (3) affects substantial rights; if these elements are satisfied, then the court may correct the error, but only if (4) the error seriously affect the fairness, integrity or public reputation of judicial proceedings."

United States v. Miller, 263 F.3d 1, 4 (2d Cir. 2001) (internal quotations and citations omitted). An error is "plain" if it is a "clear or obvious" deviation from current law. See United States v. Brown, 352 F.3d 654, 664 (2d Cir. 2003). To "affect substantial rights," an error must be "prejudicial, meaning that it affected the outcome of the district court proceedings." United States v. Zillgitt, 286 F.3d 128, 139 (2d Cir. 2002) (internal quotations and citations omitted).

Prior to the imposition of the condition that Petitioner was charged with violating, Petitioner demonstrated his ability to direct others to, *inter alia*, kidnap his daughter Suha to Jordan while he was incarcerated at the MDC and, thus, the imposition of the condition of supervised release that Petitioner return his daughter Suha to the United States was not error.

Even assuming, *arguendo*, that there was error, any conceivable error in this case was not plain nor did it affect Petitioner's substantial rights. The imposition of a special condition of supervised release that requires a defendant convicted of International Parental Kidnapping to return his child to the United States is not a "clear or obvious deviation from current [Second Circuit] law." Brown, 352 F.3d at 664; see, e.g., United States v. Amer, 110 F.3d 873, 883-84 (2d Cir. 1997). Moreover, because, *inter alia*, Judge Trager noted that upon the child's return to the United States he would consider reducing Petitioner's sentence, (Tr. of Sent. Hear. 13-14), Petitioner was not unduly prejudiced by the imposition of this special condition. See, e.g., United States v. Herd, 87 F. App'x. 211, 212 (2d Cir. 2004). Accordingly, habeas relief is not warranted on this claim.

7

F.  Due Process

Petitioner further contends that he was denied due process in connection with his supervised release violation because he was not given a revocation hearing within a "reasonable time" pursuant to Federal Rule of Criminal Procedure 32.1(b)(2). However, "[t]he mere fact of a delay . . . is not by itself sufficient to establish a due process violation." King v. Hasty, 154 F. Supp. 2d 396, 401 (E.D.N.Y. 2001). Instead, Petitioner "must show that the delay was 'unreasonable and prejudicial.'" Id. (quoting Heath v. United States Parole Comm'n, 788 F.2d 85, 89-90 (2d Cir. 1986)); see also Reilly v. Morton, No. 97 Civ. 5571, 1999 WL 737916, at *4 (E.D.N.Y. Sept. 16, 1999) (holding that "in order to grant *habeas* relief because a . . . revocation hearing [was] delayed, a finding of prejudice based on the delay[ ] must be made"). The standard is whether the delay "prejudices [Petitioner] by substantially limiting [his] ability to defend against the charge that the conditions of supervised release were violated." United States v. Ramos, 401 F.3d 111, 116 (2d Cir. 2005); see also United States v. Patterson, 135 F. App'x. 469, 475-76 (2d Cir. 2005).

Although the violation hearing was scheduled for March 22, 2007, defense counsel requested two (2) adjournments and further delayed the hearing due to a health condition during the Summer of 2007. Even assuming, *arguendo*, that a revocation hearing was not held within a "reasonable time," Petitioner was not prejudiced by the delay. Although Petitioner alleges that Respondent and the court "have not set forth any set of facts or circumstances to lead a reasonable person to believe that there is any basis to delay the revocation hearing," Petitioner does not assert that he was prejudiced by the delay, nor does Petitioner identify any potentially exculpatory evidence that was unavailable to him because of the delay, and the Court discerns no

prejudice caused by the delay. Moreover, Petitioner was found guilty of the charged violation and sentenced to time served. Accordingly, Petitioner was not substantially limited in his ability to defend against the charge that he violated a condition of his supervised release, therefore, Petitioner was not denied due process. See, e.g., Reilly, 1999 WL 737916, at *4.

Accordingly, the Petition seeking a writ of habeas corpus pursuant to § 2241 is denied.

III. CONCLUSION

The Petition for a writ of habeas corpus is DENIED in its entirety and the proceeding is dismissed. Since Petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; see also Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); Luciadore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000); Kellogg v. Strack, 269 F.3d 100, 102 (2d Cir. 2001). Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 1, 2009
Central Islip, New York

9

Copies to:

Tarek Al Manware
54613-053
Metropolitan Detention Center Brooklyn
P.O. Box 329002
Brooklyn, NY 11232